UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present                         Not Present

**Proceedings:**     (IN CHAMBERS) - CIVIL CONTEMPT ORDER REGARDING DEFENDANT EDUARDO MARTINEZ

## I.     INTRODUCTION & BACKGROUND

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. The background of this case is well-known to the parties and set forth in the Court's amended preliminary injunction. See dkt. 51.

On June 24, 2024, plaintiff, the Federal Trade Commission ("FTC" or "plaintiff"), commenced this civil action pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6105(b), and Section 522(a) of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6822(a). Dkt. 1 ("Compl."). Plaintiff asserts claims against the following defendants: Panda Benefit Services, LLC; Clarity Support Services, LLC; Pacific Quest Services; Prosperity Loan Services LLC; Public Processing Services LLC; Quick Start Services, LLC; Select Student Services, LLC; Signature Processing Services, Inc. (collectively, the "corporate defendants"); Eduardo Avalos Martinez; Emiliano Salinas; Christopher Michael Hanson; and Melissa Salinas (collectively, the "individual defendants"). Compl. ¶¶ 9-20.

On June 24, 2024, on motion by the FTC, the Court entered an *ex parte* temporary restraining order, asset freeze, appointment of a receiver, and other equitable relief against defendants. Dkt. 29. Thomas McNamara was appointed as the Receiver. Id. at 15. On July 8, 2024, on motion by the FTC, the Court entered a preliminary injunction, which was thereby amended on July 10, 2024, continuing the receivership. Dkts. 48, 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                              'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

The amended preliminary injunction defines "Receivership Entities" as the corporate defendants, "as well as any other entity that has conducted any business related to Defendants' marketing of Debt Relief Services, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant, including but not limited to Clarity Tax Relief, LLC, Docs Done Right, Inc., Docs Done Right, LLC, Docs Done Right, LP, Mimo Services, Inc., Red Signature Solutions, LLC, Design It Media, Inc., GFY Services, Inc., and Serene Creations, Inc." Dkt. 51 at 7.

On March 12, 2025, the Court entered a partial stay to enable the FTC to consider a final settlement agreement with two specific defendants: Select Student Services, LLC ("Select Student Services") and Eduardo Avalos Martinez ("Martinez").[1] Dkt. 85.

On April 30, 2025, the Receiver filed an *ex parte* application for an order to show cause why defendant Martinez should not be held in civil contempt. Dkt. 97. When advised of the *ex parte* application, the FTC "did not indicate [that] it oppose[d] the application." Id. at 1. On May 7, 2025, the Court granted the Receiver's *ex parte* application and ordered Martinez to show cause why he should not be held in civil contempt by May 21, 2025. Dkt. 104.

The Court's findings in granting the *ex parte* application are incorporated into this order by reference. In brief, the Court found that the Receiver demonstrated, by clear and convincing evidence, that Martinez violated Sections XV, XIII.C, VI.B, VI.C, and VII of the preliminary injunction. Id. at 11. Specifically, the Court determined that Martinez failed to cooperate with the Receiver's efforts to gain control of a significant asset of the Receivership Estate: the contract rights to a villa in the Palacio Del Mar development, in Playas de Rosarito, Baja California, Mexico (the "Villa"). Id. Martinez used Receivership Estate funds to purchase the Villa by wiring at least $775,000 through his

---

[1] The Court only addresses procedural history related to defendants Select Student Services and Martinez for the purposes of this order, but briefly notes the circumstances of the other defendants. On October 2, 2024, the Court entered stipulated orders for permanent injunction and monetary judgment as to seven of the 12 defendants. Dkts. 79-80. Separately, on May 6, 2025, the Court granted the FTC's motion for default judgment and entered orders for permanent injunction against the three remaining defendants. Dkt. 103.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

enterprise, defendant Clarity Tax Relief, LLC ("Clarity Tax"), between 2021 and March 2024, but the transaction was never completed, as the Purchase Agreement for the Villa provides for a total contract price of $800,000. Id. at 2-3. The seller of the Villa, a Mexican trust, is willing to effect and recognize an assignment of the property rights and assist in transferring the Villa to the Receiver if Martinez executes an agreement assigning his rights under the Purchase Agreement to Clarity Tax (the "assignment"). Id. at 5-6. Further, the seller will provide information to the Receiver, such as a closing statement, if Martinez signs an authorization form to share information (the "authorization"). Id. at 6. These documents must also be executed before a notary public in Mexico, requiring Martinez to travel to Mexico. Id. at 7. However, as of the date that the *ex parte* application was filed (April 30, 2025), Martinez had not signed and returned either document, despite the fact that he agreed to sign the assignment on April 18, 2025, and the Receiver continued to follow up with him and his counsel. Id. at 6.

Separately, on May 13, 2025, defendant Martinez and defendant Select Student Services each stipulated to the entry of orders for permanent injunction and monetary judgment against them. Dkt. 106. The next day, the Court entered orders for permanent injunction and monetary judgment against Martinez and Select Student Services pursuant to their stipulations. Dkt. 107.

On May 21, 2025, Martinez, proceeding *pro se*, filed a response to the Court's order to show cause. Dkt. 108 ("Resp."). On May 28, 2025, the Receiver filed a reply. Dkt. 109 ("Reply").

The issue of whether Martinez should be held in civil contempt is presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." California Dep't of Soc. Servs. v. Leavitt, 523 F.3d 1025, 1033 (9th Cir. 2008) (quoting Shillitani v. United States, 384 U.S. 364, 370 (1966)). A party requesting an adjudication of civil contempt must establish "by clear and convincing evidence that the contemnors violated a specific and definite order of the court." Stone v. City & Cnty. of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." Id. A party's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

conduct "need not be willful" to violate a court order, and there is "no good faith exception to the requirement of obedience." In re Dual–Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). However, a party may avoid being found in contempt by demonstrating that its failure to comply with a court order was "based on a good faith and reasonable interpretation of the order." Id. Additionally, "contempt is appropriate only when a party fails to comply with a court order that is both specific and definite." Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 465 (9th Cir. 1989).

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986). Coercive fines, or any portion thereof, are payable to the Court rather than to the opposing party. Id. When imposing a coercive civil contempt sanction, a court should consider: (1) the character and magnitude of the harm from continued noncompliance; (2) the probable effectiveness of any sanctions in achieving future compliance; (3) the amount of defendant's financial resources; and (4) the willfulness of the violating party. See United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1946); Gen. Signal Corp., 787 F.2d at 1380. The amount of a compensatory fine, on the other hand, should be based upon the movant's actual losses suffered as a result of the violation. See Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983).

### III. DISCUSSION

#### A. Contempt Finding

In its order to show cause dated May 7, 2025, the Court found that the Receiver "established by clear and convincing evidence that Martinez failed to cooperate with the Receiver by signing the assignment and authorization and failed to assist the Receiver in taking possession of Martinez's contractual rights to purchase the Villa." Dkt. 104 at 11. Specifically, the Court found that "[t]he Receiver has shown that Martinez violated Sections XV, XIII.C, VI.B, VI.C, and VII. Section XV" of the preliminary injunction. Id. at 9. Because the Court found that Martinez "violated a specific and definite order of the court… [t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." See Stone v. City & Cnty. of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

In response to the order to show cause, Martinez argues that he should not be held in civil contempt and states that he "seeks the Court's guidance" on his obligations to "avoid any misunderstanding." Resp. at 3. Martinez asserts that he signed a preliminary agreement with the FTC in March 2025, "which included a provision requiring [him] to assign any rights [he] may have to a property in Mexico, on which [he] had defaulted payment, to the [R]eceiver within 30 days of the agreement's approval." Id. at 1. Martinez contends that on April 18, 2025, his attorney informed Martinez that the Receiver and the Receiver's associate had contacted him and asked if Martinez had been sued by the owner of the Villa. Id. According to Martinez, he "confirmed" that he had been served with a lawsuit on April 11, 2025 and that he had retained Mexican counsel in response. Id. Martinez states that his attorney "relayed" the Receiver's request to sign two documents: (1) an assignment transferring his rights to the Villa to Clarity Tax, and (2) a waiver of Martinez's right to sue the Mexican developer. Id. at 1-2.

Subsequently, Martinez states that he conducted a video call with his attorney, the Receiver, and the Receiver's associate, in which the Receiver explained that the developer of the Villa had been "difficult to communicate with but had recently responded," necessitating that Martinez sign the documents "immediately." Id. at 2. Martinez asserts that his attorney "expressed concern about signing a waiver with the developer," given the recently-filed lawsuit against Martinez, but "indicated that assigning the property to Clarity Tax [] might be permissible." Id. Martinez states that he then "raised" that he had already agreed to assign his rights to the Receiver and "questioned why additional documents were needed before the settlement was finalized." Id. According to Martinez, the Receiver responded that immediate action was required under the preliminary injunction, and warned that any delay in signing the documents could lead to his recommendation to cancel the settlement agreement and hold Martinez in contempt. Id. Martinez contends that this caused him "significant concern" and led him to review the preliminary injunction again, in which he "found no explicit requirement to assign property to a [R]eceivership [E]ntity." Id. Seeking clarification, Martinez asserts that he requested another call with the Receiver to discuss the lawsuit against him, inquire if the Receiver would assume responsibility for the lawsuit if Martinez assigned the property, and ask which specific provisions of the preliminary injunction required the assignment. Id. According to Martinez, the Receiver "declined to provide further explanation" and instead accused Martinez of "delay[] tactics." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

    Later, Martinez states that his attorney followed up with the Receiver's associate, who provided more explanation of the Receiver's position. Id. Martinez asserts that his attorney offered to represent him if the Receiver pursued contempt proceedings, but Martinez told him that he "could not afford additional legal representation." Id. Martinez contends that "throughout this time," he has been working with his counsel in Mexico to respond to the lawsuit filed by the developer of the Villa and to advise him on the waiver that the Receiver asked Martinez to sign. Id. Martinez states that he was not personally served with the Receiver's *ex parte* application, but later received an email that it had been granted. Id. at 2-3.

    Martinez argues that the Receiver's *ex parte* application "may have omitted key details" and portrayed him as "uncooperative." Id. at 3. According to Martinez, these details include: (1) that he is "actively being sued in Mexico regarding the same property"; (2) that the Receiver requested that Martinez waive his right to sue the developer; (3) that Martinez "already agreed" to assign his rights to the Receiver under the settlement agreement, which was approved by the Court on May 14, 2025; and (4) that the Receiver "declined to engage in further discussion" when Martinez sought clarification. Id. Martinez requests additional time to address the lawsuit against him before "being forced to sign a waiver." Id.

    In reply, the Receiver argues that he and his counsel have continually clarified the steps necessary for Martinez to cooperate. Reply at 1. The Receiver states that his counsel called Martinez multiple times in the week before the reply was filed and spoke with him directly on May 27, 2025. Id. During the call, the Receiver asserts that Martinez committed, again, to signing the assignment and authorization and returning the documents on May 28, 2025, but they have not been returned yet. Id. at 1, 6. Given Martinez's prior conduct, the Receiver asserts that "his word cannot be accepted at face value," and Court oversight is needed to ensure that he signs the documents and travels to Mexico to execute them in front of a notary public. Id. at 2. Additionally, the Receiver argues that Martinez made several inaccurate statements in his response. Id. The Receiver states that Martinez is not being asked to sign a waiver of his right to sue the developer of the property; rather, he is being asked to sign an assignment of his rights under the Purchase Agreement and an authorization permitting the developer to share information regarding the purchase with the Receiver. Id. at 2-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

    The Receiver states that on or about April 18, 2025, the Receiver's cross-border counsel sent copies of the draft assignment and draft authorization to Martinez and his counsel and had a telephone call. Id. at 3. During the call, the Receiver asserts that Martinez's counsel expressed concerns about his client signing a release of his right to sue the Mexican developer. Id. As such, according to the Receiver, the Receiver's counsel emailed a revised authorization to Martinez's counsel on April 21, 2025, which removed any language relating to a release. Id. The Receiver contends that "[t]he [a]uthorization is a straightforward document permitting the developer to share 'information related to the status, payment history, account statements, and any other information related to [Purchase Agreement]' with the Receiver," and does not include any "waiver." Id. Further, the Receiver argues that Martinez has not identified any issues with the lawsuit filed against him in Mexico that would justify further delay of his obligations in this case. Id. at 4. The Receiver contends that Martinez does not need additional time for his Mexican counsel to review the assignment and authorization because he has had both documents for more than one month, and he has not articulated any basis to believe that cooperation with the Receiver will increase Martinez's legal exposure in Mexico. Id. The Receiver states that this is "particularly" true because the Receiver will be required to pay outstanding amounts to take title to the Villa, and the assignment will transfer Martinez's obligations to Clarity Tax. Id. The Receiver contends that Martinez's excuses represent only bad-faith delay, and even if Martinez signs the documents, it will not obviate the need for a contempt finding. Id. at 4-5.

    The Receiver argues that Martinez's obligations to sign the documents are clear under the preliminary injunction. Id. at 5. Further, the Receiver asserts that Martinez's now-approved order and judgment with the FTC "contains an additional specific requirement that the Villa be turned over," and that Martinez's claim that he was waiting to comply with it "ring[s] hollow" because he also states that he needs more time to speak with his Mexican counsel. Id. Taken together, the Receiver states that Martinez's response does not show that he has taken all reasonable steps to comply. Id. at 6. The Receiver contends that Martinez will likely not sign the documents without a contempt order, but even if they are signed, a contempt order is still needed to ensure his travel to Mexico to execute them. Id. According to the Receiver, Martinez's claim that he attempted to cooperate is disingenuous, because Martinez left only two voicemails for the Receiver's counsel in the past month, and in both instances, the Receiver's counsel replied to Martinez's counsel. Id. at 7. Finally, the Receiver contends that Martinez's claim that he wasn't formally served the *ex parte* application "should not be credited,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

because Martinez received actual notice, and Martinez's counsel confirmed that Martinez was forwarded a copy of it on May 1, 2025.[2] Id. at 7, n.2.

The Receiver requests a contempt order requiring Martinez to: (1) sign the assignment within 24 hours; (2) sign the authorization within 24 hours; and (3) travel to Mexico to sign all documents, within 72 hours of a request by the Receiver, to effect the transfer of the Villa before a notary public. Id. at 8. The Receiver also requests that the Court order, if Martinez fails to comply, an initial fine of $1,000 per day until he complies, to be increased to $2,000 per day if Martinez fails to comply within seven days, and then increased to $4,000 per day if Martinez fails to comply within 14 days. Id. Additionally, the Receiver requests that Martinez be held liable for the Receiver's fees and costs incurred in bringing this motion, including the attorneys' fees. Id.

"[A] person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].' 'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993) (citations omitted). "In assessing whether an alleged contemnor has taken 'every reasonable step' to comply with the terms of a court order, the district court can consider (1) a history of noncompliance and (2) a failure to comply despite the pendency of a contempt motion." Angus v. Transnat'l Auto. Grp., Inc., No. CV09-00143-MMM-FFMx, 2010 WL 11519624, at *3 (C.D. Cal. Sept. 20, 2010) (citing Stone, 968 F.2d at 857)).

The Court finds that Martinez's response to the order to show cause does not demonstrate substantial compliance with or even reasonable effort to comply with Sections XV, XIII.C, VI.B, VI.C, and VII of the preliminary injunction. Further, Martinez appears to have a history of noncompliance with the Receiver's efforts to obtain title to the Villa, which led the Receiver to draft an earlier contempt motion in September 2024, before Martinez agreed, in theory, to cooperate. See dkt. 104 at 4-5. Additionally, the pendency of the Receiver's instant motion has not led to compliance, as even after Martinez agreed, for the second time, to sign the documents on May 27, 2025, he has not signed and returned them. See Reply at 6.

---

[2] The Receiver states that on May 6, 2025, Martinez's counsel informed him that he was no longer representing Martinez in connection with this motion. Reply at 7, n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

The crux of Martinez's argument appears to be that: (1) it was reasonable for him not to sign the assignment because he "already agreed" to assign his rights to the Villa in his now-approved settlement agreement, and (2) it was reasonable for him not to sign the authorization because it would require him to waive his rights to sue the developer of the Villa, who recently filed a lawsuit against him. See Resp. at 3. Neither of these arguments demonstrate that Martinez acted based on a good faith and reasonable interpretation of the preliminary injunction or that he took reasonable steps to comply with it. As the Court concluded in its order dated May 27, 2025:

> [U]nder Section XV [of the preliminary injunction], Martinez is obligated to "fully cooperate with and assist the Receiver," including by providing necessary information and records related to the Villa. Further, under Section XIII.C, Martinez is required to "fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of" the Villa, including by delivering documents pertaining to the Receivership Entities. It appears to the Court that by refusing to sign the assignment and authorization necessary to bring the Villa into the Receivership Estate and return these documents to the Receiver, Martinez is in violation of both of these provisions.
>
> Additionally, it appears that Martinez is in violation of Section VI.B, because he has not "take[n] all steps necessary to provide FTC counsel and Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States of America," such as the assignment and authorization, which must be signed before a notary public in Mexico. Further, Martinez has not complied with Section VI.C, because the contractual rights to the Villa are, at minimum, "under [his] direct or indirect control," and he has not "[t]ransfer[red] to the territory of the United States all Documents and Assets located in foreign countries," i.e., the contractual rights to the Villa, which is located in Mexico. Finally, it appears that Martinez is in violation of Section VII, because his non-cooperative actions have resulted in the "hindrance of the repatriation" of the Villa.

Dkt. 104 at 11 (citations omitted). Martinez appears to argue that his obligation under the settlement agreement to assign his rights to the Villa moots the Receiver's current demand that Martinez sign the assignment, as required by the preliminary injunction. The Court finds this argument unavailing, as it appears that Martinez is required, both by the preliminary injunction and the settlement agreement, to sign the assignment. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

will ensure compliance with his obligations under Sections XV, XIII.C, VI.B, VI.C, and VII of the preliminary injunction to fully cooperate with the Receiver. It will also ensure compliance with his specific obligations under the settlement agreement. See dkt. 107 at 15-16 ("Defendant Martinez shall, within thirty (30) days after the date of entry of this Order, transfer by assignment to the Receiver or his designated agent, in the form satisfactory to the Receiver, Defendant Martinez's rights to the purchase agreement dated January 14, 2021… for the sale of… the 'Villa'").

Separately, Martinez appears to argue that he took reasonable steps to comply with the preliminary injunction because he needed, and still needs, additional time for his Mexican counsel to review the authorization before he signs it. This is because, according to Martinez, the authorization is "a waiver of [his] right to sue the Mexican developer," which was especially concerning, given that the developer recently filed a lawsuit against Martinez. Resp. at 2. While Martinez did not provide any information on the developer's claims against Martinez or the subject of the lawsuit, the Court finds that the plain language of the authorization shows that it does not involve a waiver of rights. The authorization appears to be in the format of a draft letter from Martinez to the administrator and trustee of the trust that owns the Villa. Dkt. 109-3, Ex. B. It provides, in pertinent part:

> I, Eduardo Martínez, residing at 6529 Berry Avenue, Buena Park, California, 90620, United States of America, hereby appear before you to AUTHORIZE the release of information related to the status, payment history, account statements, and any other information related to the Contract for the Promise of Partial Extinction of Trust and Transfer of Property with Reservation of Title, regarding the property identified as Condominium No. 50200-1, known as a Villa in the development named "Palacio del Mar," located at Kilometer 50+500 of the Tijuana-Ensenada Free Highway in the city of Rosarito, Baja California, Mexico, to Thomas W. McNamara, in his capacity as Receiver, appointed by the United States District Court for the Central District of California under case number 8:24-cv- 01386.

Id. Because the authorization does not require Martinez to waive his rights to sue the developer, the Court is not persuaded by this argument. The Court therefore finds that Martinez has not met his burden to demonstrate that he "performed 'all reasonable steps within [his] power to insure compliance' with the [C]ourt's orders." See Stone, 968 F.2d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

at 856. He has also failed to "show 'categorically and in detail' why [he was] unable to comply." See Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983). Accordingly, the Court concludes that Martinez is in contempt of Sections XV, XIII.C, VI.B, VI.C, and VII of the preliminary injunction. See id. ("Appellants' assertions of their good faith efforts to comply with the order are irrelevant. Intent is not an issue in civil contempt proceedings. The sole question is whether a party complied with the district court's order. Appellants did not. They also failed to present a cognizable defense. In these circumstances a finding of contempt was within the district court's discretion.") (citations omitted).

### B. Sanctions

Where the purpose of a contempt order is to ensure a party's compliance, the Court "must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947). The Court finds that both of these factors weigh toward sanctions in these circumstances. If Martinez continues to fail to comply with the preliminary injunction by not cooperating with the Receiver's efforts to obtain title to the Villa, the magnitude of the harm caused by Martinez's conduct will continue to grow. This harm is serious because, as noted by the FTC in a different motion related to the Villa, defendants' assets in this matter "are far below the amount of consumer injury." Dkt. 87 at 5. Specifically, the Court entered judgments of more than $16 million as monetary relief against defendants, but as of December 31, 2024, the "net available cash" in the Receivership Estate was "a little over $1 million." Id. at 3, 5. Therefore, by obtaining title to the Villa, the Receiver "will [] restore[] to the [R]eceivership [E]state a significant asset" and enable greater redress of consumer injury. Id. at 5. Continued non-compliance by Martinez will greatly hinder this effort.

Additionally, while it appears that the Receiver's suggested sanctions would be effective in coercing Martinez's compliance, the Court finds that more limited sanctions are appropriate at this stage of the proceedings. The Court directs Martinez to comply fully with the preliminary injunction by signing and returning the assignment and authorization to the Receiver by 5:00 pm PDT on June 10, 2025. If Martinez does not do so, the Court will impose a fine of $1,000 per day, beginning on June 11, 2025 and continuing each day thereafter until Martinez provides the signed documents to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

Receiver. See also Bureau of Consumer Fin. Prot. v. Consumer Advoc. Ctr., No. SA CV 19-1998-MWF-KSx, 2023 WL 3564786, at *6 (C.D. Cal. Jan. 6, 2023) (requiring contemnor to comply with the Court's previous orders by identifying and transferring the relevant assets to the Receiver within 11 days, and imposing a fine of $1,000, beginning on the twelfth day, if contemnor failed to comply); Fed. Trade Comm'n v. Dinamica Financiera LLC, No. CV 08-04649-MMM-PJWx, 2008 WL 11342612, at *5 (C.D. Cal. Sept. 22, 2008) (requiring contemnor to comply with the Court's order to comply with the FTC's civil investigative demand by answering interrogatories and producing documents within seven days, and imposing a fine of $750 per day, beginning on the eighth day, if contemnor failed to comply).

At this juncture, the Court declines to impose escalating fines or issue a specific order that Martinez travel to Mexico within 72 hours of the Receiver's request, as it remains possible that Martinez can cure his contempt by signing the assignment and authorization and continuing to cooperate with the Receiver to ensure that the Receivership Estate obtains title to the Villa. See Stone, 968 F.2d at 861 ("In employing their broad equitable powers, federal courts should 'exercise the least possible power adequate to the end proposed.' Courts have conceded, however, that when the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable.") (citations omitted). The Receiver may renew his request if Martinez does not comply with the required travel to Mexico after signing the assignment and authorization.

   **C.   Attorneys' Fees**

The Ninth Circuit has held that a court may sanction a contemnor by ordering that he pay a party's attorneys' fees and costs. See Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985) ("We therefore conclude that the trial court should have the discretion to analyze each contempt case individually and decide whether an award of fees and expenses is appropriate as a remedial measure."); Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc., 539 F.3d 1039, 1041 (9th Cir. 2008) (detailing an award of $353,611.70 for attorneys' fees as part of contempt sanctions); Henry Schein, Inc. v. Certified Bus. Supply Inc., No. SACV 03-1662-DOC-ANx, 2008 WL 4962851, at *1 (C.D. Cal. Nov. 18, 2008) (recognizing that reasonable attorneys' fees and costs are appropriate sanctions for a defendant's civil contempt).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
|---|---|---|---|
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

The Receiver has incurred time and expense bringing Martinez's failure to comply with the preliminary injunction to the Court's attention, and Martinez has not taken reasonable steps to comply. It appears that even after speaking with the Receiver on May 27, 2025 about the instant motion and indicating that he would sign and return the assignment and authorization on May 28, 2025, Martinez continues to fail to comply. The Court finds that an award of reasonable attorneys' fees is warranted in these circumstances. See Bademyan v. Receivable Mgmt. Servs. Corp., No. CV08-00519-MMM-RZx, 2009 WL 605789, at *4 (C.D. Cal. Mar. 9, 2009) (Noting that a party's expense of resources in filing a contempt motion and a contemnor's failure to take "affirmative steps to comply with the terms of the [court's] order" are "precisely the types of considerations that render an attorneys' fees award appropriate."); China Cent. Television v. Create New Tech. (HK) Ltd., No. CV15-1869 MMM-AJWx, 2015 WL 6755188, at *7 (C.D. Cal. Nov. 4, 2015) (Awarding requested attorneys' fees incurred in connection with contempt proceeding because contemnor "completely disregarded" the preliminary injunction).

Once a party has established that it is entitled to an award of attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Receiver has not submitted any evidence of his attorneys' fees to enable the Court to make this determination. The Court therefore directs the Receiver to submit such evidence no later than June 19, 2025.

### IV. CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** the Receiver's request to hold Martinez in contempt. The Court **GRANTS** the request insofar as it orders Martinez to sign and return the assignment and authorization to the Receiver by 5:00 pm PDT on June 10, 2025. The Receiver is directed to serve this order on Martinez and his counsel via electronic mail by June 6, 2025. To ensure compliance, the Court will impose a $1,000 daily fine on Martinez, beginning on June 11, 2025, for every day that he fails to provide the signed documents to the Receiver. If this sanction does not cause Martinez to comply as ordered, the Receiver may initiate further contempt proceedings. The Court also **GRANTS** the request insofar as it seeks

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-01386-CAS-RAOx | Date | June 5, 2025 |
| Title | Federal Trade Commission v. Panda Benefit Services, LLC et al | | |

reasonable attorneys' fees for the contempt motion. The Court directs the Receiver to submit evidence of his attorneys' fees no later than June 19, 2025. In all other respects, the Court **DENIES** the Receiver's request without prejudice.

 IT IS SO ORDERED.

                                          00 : 00
                    Initials of Preparer  CMJ